**UNITED STATES of America, Appellee,**

v.

**Donald G. AUEN, Defendant–Appellant.**

**No. 677, Docket 87–1109.**

United States Court of Appeals, Second Circuit.

Argued March 9, 1988.

Decided May 17, 1988.

Charles E. McFarland, Newton Falls, Ohio, for defendant-appellant.

Alan Hechtkopf, Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C. (William S. Rose, Jr., Asst. Atty. Gen., Gary R. Allen, Robert E. Lindsay, Attys., Tax Div., U.S. Dept. of Justice, Washington, D.C., Frederick J. Scullin, Jr., U.S. Atty., N.D.N.Y.), for appellee.

Before MESKILL and ALTIMARI, Circuit Judges, and MISHLER, District Judge.*

ALTIMARI, Circuit Judge:

Defendant-appellant Donald G. Auen appeals from a judgment of conviction entered in the United States District Court for the Northern District of New York after a three-day jury trial before Judge Thomas J. McAvoy. Auen was tried on a three count indictment that charged him with willfull attempted income tax evasion for the calendar years 1981 through 1983 in violation of 26 U.S.C. § 7201. The indictment specifically alleged that Auen attempted to evade paying federal income taxes by supplying false and fraudulent employee withholding allowance certificates (Forms W–4) to his employers, failing to make income tax returns and failing to pay taxes due and owing.

After a jury trial, Auen was convicted on each count of the indictment, and was sentenced to two-year terms of imprisonment on counts one and two, to run concurrently, a two-year term of imprisonment on count three, which was suspended, and a three-year term of probation commencing upon his release. Auen was also fined $2,000.

On appeal, Auen argues that the district court erred in failing to hold a competency hearing pursuant to 18 U.S.C. § 4241 despite the fact that Auen exhibited bizarre behavior throughout the pretrial, trial and sentencing proceedings. Auen also contends that he was denied his right to assistance of counsel when the district court did not provide him with appointed counsel during the trial and sentencing proceedings.

For the reasons that follow, we remand this matter to the district court to determine Auen's competency to stand trial pursuant to 18 U.S.C. § 4241.

## FACTS AND BACKGROUND

The government's evidence presented at trial overwhelmingly established that Auen had evaded his income tax liability for the years covered in the indictment, 1981 through 1983. The evidence indicated that Auen worked as a boilermaker for various employers during that period, received wages from his employment in the approximate amount of $28,200 for 1981, $58,300 for 1982 and $54,000 for 1983, was issued wage and tax statements (Forms W–2) from his employers indicating the correct amount of his wages for each year, and failed to file an income tax return or otherwise pay his federal income taxes for those years.

To establish the willfulness of Auen's conduct, the government sought to prove that he successfully avoided having federal income tax withheld from his wages for most of the period covered in the indictment by submitting to his employers false information on his withholding allowance certificates (Forms W–4). On the W–4's Auen submitted to his employers, the evidence showed that he falsely claimed that he was exempt from income tax liability for the current year and owed no income tax liability for the preceding year. Auen's employers honored his claimed exempt status and withheld no federal income tax from his wages except for a brief, one and a half month period in late–1983. The government also presented evidence establishing that Auen had been furnished with copies of an income tax instructional booklet for the tax year 1981, had been served with tax delinquency notices and was notified that he had been assessed penalties for submitting the false exempt W–4's.

From 1984 to 1986, the IRS conducted an investigation to determine whether Auen may have committed criminal violations of the Internal Revenue Code. On December 3, 1986, after the investigation was complete, Auen was indicted. Auen was then arrested on December 12, 1986 and between January 26 and February 19, 1987, he was tried, convicted and sentenced.

During the initial phase of the government's investigation into Auen's activity, it became apparent that Auen may not have

---

* Honorable Jacob Mishler, Senior District Judge of the United States District Court for the East-

ern District of New York, sitting by designation.

been entirely rational. In a letter sent to the Special Agent investigating his case, Mark Sweeney, Auen included a strange passage concerning the demise of his cat, also named Sweeney, which amounted to a not-too-veiled threat to Agent Sweeney's life. In that letter, Auen stated:

> You know Special Agent Sweeney, I should have an easy time remembering your name as I once had a cat named "Sweeney". Now "Sweeney" (my cat) looked like a real clean gentleman from his outward appearances, everyone used to comment on what a nice looking cat old "Sweeney" was. But, oh boy, did I ever learn learn [sic] the hard way about not being deceived by "Sweeney's" appearances.
>
> First I discovered old "Sweeney" was hosing down all the furniture in the house when he got inside. My neighbors told me this was S.O.P. for tom-cats, so I took old "Sweeney" to the vet and had his tail section lightened. Afterwards I noticed old "Sweeney's" meow went up a couple of octaves. That isn't the end of my rememberence of old "Sweeney".
>
> After "Sweeney" was home a couple of days, he went from bad to worse, it was almost like he was out to get me because I had his balls cut off for peeing on the furniture. Yep, I bet you already guessed it Mr. Sweeney, old "Sweeney" started sneaking into the house and doing round-browns all over the place ... and walking around looking like an innocent gentleman (tom-cat) (correction, altered tom-cat). Yep, you probably already guessed it again Mr. Sweeney, old "Sweeney" bought the bullet. But I at least gave him a fighting chance as I took him out to the country and dropped him off three times, but old "Sweeney" kept coming back and getting inside the house and leaving his calling card (the round-browns) in the corners. The 3rd trip to the country bought old "Sweeney" the smoking end of the Second Amendment.
>
> Now you know why I said I won't have a hard time remembering your name Mr. Sweeney. It reminds me how the Constitution helped put an end to a dirty cat named "Sweeney" from dumping all over me.

When Auen was arrested, the government agents executing the arrest warrant found various semi-automatic weapons at his home in a cabin located deep in the woods. Sometime after Auen's arrest but before his arraignment, Auen threatened the United States Attorney and the Assistant United States Attorney ("AUSA") responsible for Auen's case. In addition, while Auen was being processed at the jail after his arrest, he would not cooperate with the jail officials and refused to sign his fingerprint cards or an assignment of counsel form.

At the arraignment and pretrial detention hearing before Magistrate Conan, Auen's odd behavior was first brought to the attention of the court. After the government presented its case and the magistrate read the charges in the indictment, Auen was given the opportunity to speak. Auen stated that it was his belief that compliance with the Internal Revenue Code was voluntary and, because he chose not to "volunteer" to pay his taxes, he was before the court against his will.

When the magistrate directed that a not guilty plea be entered on Auen's behalf, he objected:

> Not only am I here against my will but with all due respect to the Judge, sir, you've—you're speaking—you're speaking against my will. Nobody can speak for another man against his will. I don't plead in this court.

After the charges contained in the indictment were read to Auen, the magistrate asked him whether he understood the charges. Auen responded that he understood them "completely," but he then digressed, stating:

> I'm not a lawyer and I never contended to be one. I have my own opinions about that trade, those are my opinions. I bear no one any malice. It's a matter of law, your Honor. I just—I just don't volunteer to comply with the United—Title 26. I didn't—I freely chose not to volunteer. What am I doing here? Suf-

fered six years of what I term psychopolitical terrorism by the Internal Revenue Service, trying to force me to comply with it. And if I did want to comply with it now, it'd be impossible for me because they all got guns pointed at me.

\* \* \* \* \* \*

I would demand that I be turned lose [sic] right now. But if that's not gonna [be] the case then I request that I be allowed to go home and get my affairs in order, get everything in order before I come back down here whatever date it is. And get on with it. I don't volunteer. I have no arguments with any of your laws. I don't volunteer. I'm here at the point of a gun. A lot of them.

After Auen had finished speaking, the government sought an order from the court detaining Auen prior to trial on dangerousness and flight grounds. The magistrate informed Auen that he had a right to a five-day extension before the detention hearing and also informed him of his right to assistance of counsel at the hearing. Auen indicated that he wanted to proceed with the hearing at that time. He refused, however, to sign a waiver of counsel form, stating that he would not "sign anything" because he was at the hearing "at the point of all these guns[.]" The AUSA stated that he "strongly believe[d that] a lawyer would be in the interests of Mr. Auen," but he argued that, because Auen previously had made substantial income, the court would be required to ascertain whether Auen could afford an attorney before he could be assigned one. The magistrate agreed with the AUSA's argument and told Auen that "[i]n order for me to assign you a lawyer, you have to sign an affidavit of your indigency." Auen refused and the magistrate proceeded with the detention hearing even though Auen was not represented by counsel. At the conclusion of the hearing, the magistrate ordered that Auen be detained prior to trial.

On January 16, 1987, Auen appeared before Judge Munson, who was originally scheduled to preside over the trial in Auen's case. At that hearing, Judge Munson set January 27, 1987 as the trial date and asked Auen whether he wished to be represented by counsel. Auen responded:

I really feel I don't need Counsel. What do I need Counsel for? It's very imminent to me that I am going to go to jail, no matter what happens, so why, why do I need Counsel? You know the law says, "Volunteer". I just simply don't "Volunteer". It's just as simple as that. All things considered, you people have treated me just like outlaws with guns, that's the way I feel about it. I mean no disrespect, but that is the way it is.

On the first day of Auen's trial, Auen and the AUSA met with Judge McAvoy, to whom the case had been reassigned, in his chambers for a pretrial conference. After the AUSA outlined his case for trial, Auen inquired whether a trial was even necessary. Judge McAvoy explained that he had to go through the trial process. Auen then lapsed into another diatribe, stating:

Well, I'd like to take this opportunity to do the same thing in front of you as I did in front of Judge Munson and in front of Magistrate Conan. I'm demanding my release right now. I don't want to go through this trial. As far as I am concerned, it is an outlaw act by the Government, and if you would let me take this opportunity to show you, and I'll tell you why I think it's an outlaw act of the Government.

Because their actions meet all the crimes from the top to the bottom. First of all, I'm no public speaker, but if you'll take your Internal Revenue Code, which is a voluntary code, and I simply don't choose to volunteer, and that is a basic God-given right.

Now, what am I doing in jail without bail, et cetera, et cetera. And you take and you read the charging statute in the Internal Revenue Code, which is a voluntary code, and it says nothing about attempting or evading or defeating income taxes. This is absolutely nothing about that.

Now, this is a mistake, has to be a mistake.

Judge McAvoy attempted in vain to reason with Auen, but Auen maintained his

beliefs concerning the federal income tax laws. Later during the conference, Auen interjected, stating:

I'm putting you on judicial notice. I want to go home and go to work. I'm tired of all this crap. They have me sleeping with a riot shotgun for the last two years of my life. They drove my wife away from me. I want out of here. I want to forget about this whole thing.

Subsequently, Auen demanded that Judge McAvoy recuse himself from the case, stating:

You're being partial and bias to the Government. In fact, I cannot see any separation of powers between the Judicial and Executive whatsoever in all my experiences in court, which are very limited, none whatsoever. As a matter of fact, I consider all you people the Government, period, and that's a violation of the separation of powers as far as I'm concerned.

His request was denied.

At several times during the pretrial conference, Judge McAvoy offered Auen the opportunity to obtain legal representation. At one point, Auen responded that he wanted "competent counsel" and sought the opportunity "to go home and seek my own competent counsel." Judge McAvoy told Auen that he could not leave, but offered him use of the telephone to call a "lawyer." Auen responded, however,

what good would a lawyer do? An officer of an equity court, if I let you appoint one of them, that's going to give you a toehold in some kind of lawful or legal jurisdiction in admiralty equity court, which has none whatsoever, none whatsoever, except by a point of a gun.

Auen explained that there was a distinction between "competent counsel" on the one hand and "a lawyer" on the other.

Prior to voir dire, Judge McAvoy gave Auen another opportunity to obtain representation. Although the district court did not appoint Auen counsel—because he refused to sign a financial affidavit—the court offered him a list of attorneys and use of the telephone. Again, Auen refused:

I'm not going to hire an attorney. I have explained that I'm not going to give you one tiny even inch of proper jurisdiction. You have no venue. I'm here 100 miles away from my home. I'm going to hire competent counsel, and they are very hard to find.

Trial then began. After the AUSA gave his opening remarks, Auen first turned to Judge McAvoy and demanded his release. Then, turning to the jury, Auen repeated the various matters that he previously told the magistrate and Judge McAvoy. Auen explained that he believed the law to be voluntary and that he chose not to volunteer. He also stated that he felt harassed and "trapped" by the government. He made similar arguments during his summation, and had made only ineffectual attempts to cross-examine the government's witnesses during its case-in-chief and offered no witnesses in his defense.

After the jury returned a guilty verdict, Judge McAvoy told Auen that he was going to be detained in custody prior to sentencing. Auen responded that he did not "understand," and the judge explained that he was going to be detained because he had been convicted of three felonies. Auen replied, stating that "[e]verything that went on for the last three years, it boggles my mind, it really does."

On February 17, 1987, Auen appeared before Judge McAvoy for sentencing. Judge McAvoy began the proceedings by, once again, offering Auen assistance of counsel. The judge refused, however, to assign him an appointed attorney unless he executed a financial disclosure form. Although Auen explained that he had "exactly $145.17 left to my name," he nevertheless refused to sign the financial affidavit. In light of Auen's refusal to sign the form, Judge McAvoy proceeded with the sentencing hearing even though Auen was unrepresented. At the outset of the hearing, Auen told the court that he believed he did nothing wrong. He then turned his back, literally, on the court, and remained silent during the remainder of the sentencing hearing.

When the AUSA addressed the court regarding the sentencing issue, he offered some additional insight into Auen's erratic behavior. He explained that Auen was a member of an "extremist group" dedicated toward not obeying the income tax laws of the United States and that his actions at trial were consistent with his association with that group. He characterized Auen's conduct as "silly games," and expressed his belief that Auen was "paranoid" and that he had "adopted an irrational belief" regarding the federal tax laws.

Picking up on the AUSA's statements regarding Auen's mental state, the court stated:

> I have to agree with Mr. Benedict. Your position on the tax law is absolutely dead wrong, and the sad part about it is I think you're intelligent enough to know that. Notwithstanding Mr. Benedict's characterization of your attitude as paranoid, I think that you're mentally capable of understanding what's happening now, and what you've been doing in the past, and I think you have to take full responsibility for your choice, your free choice, as you put it, to violate the laws of the United States that the rest of us have to comply with.

The court then proceeded to sentence Auen and remanded him to the custody of the Marshal to begin his sentence.

We note that Auen apparently has remained true to his convictions on appeal because he did not seek nor obtain counsel to prosecute his appeal. Members of his family obtained representation for him for this purpose.

## DISCUSSION

Auen presents two arguments on this appeal challenging his conviction on tax evasion charges. He argues, first, that he was denied his right to assistance of counsel when he was forced to proceed to trial unrepresented and without having expressly waived his right to assistance of counsel; and second, that the district court erred when it did not make a specific determination of his competency to stand trial. Because we conclude that there was a suffi-cient basis in the record to warrant a determination by the district court of Auen's competency, we remand this case for that purpose.

"It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri,* 420 U.S. 162, 171, 95 S.Ct. 896, 903, 43 L.Ed.2d 103 (1975); *United States v. Vamos,* 797 F.2d 1146, 1150 (2d Cir.1986) (quoting *Drope* ), *cert. denied,* —— U.S. ——, 107 S.Ct. 888, 93 L.Ed.2d 841 (1987). Indeed, "conviction of an accused person while he is legally incompetent violates due process[.]" *Pate v. Robinson,* 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966).

To assure adequate procedural safeguards and thus prevent subjecting an incompetent person to trial proceedings, Congress provided that

> [a]t any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

*See* 18 U.S.C. § 4241(a). Thus, under section 4241, the prosecutor, the defendant or the court on its own motion may seek an inquiry into a defendant's competence to stand trial where reasonable cause to believe that he may be presently suffering from a mental disease or defect rendering him incompetent is present.

While "[d]eterminations of whether there is 'reasonable cause' to believe a defendant may be incompetent rests in the discretion of the district court[,]" *Vamos,* 797 F.2d at

1150 (citing *United States v. Oliver*, 626 F.2d 254, 258 (2d Cir.1980); *Newfield v. United States*, 565 F.2d 203, 206 (2d Cir. 1977)), for section 4241's procedural safeguards to be effective, the district court must necessarily exercise its discretion and make findings on the record concerning the defendant's competency where the facts presented to the court warrant such an inquiry.

■ In the instant case, we believe that there were abundant indications that Auen may not have been competent to stand trial. During the government's initial investigation, Auen's correspondence with Special Agent Sweeney in which he relayed the story concerning his cat can only be characterized as the product of a disturbed mind. After Auen was arrested and the government agents discovered his cache of semiautomatic assault weapons, he threatened the government attorneys. Then, when he was brought before Magistrate Conan, he set forth his various irrational, paranoid beliefs concerning the nature of this country's tax laws and the basis for the prosecution against him. Finally, when Auen appeared before Judge McAvoy, he continued to ramble concerning his fear of persecution—"psychopolitical terrorism"—and his belief that he was correct and that the government, the court and lawyers in general were somehow responsible for his unjustified incarceration. Taken together these factors lead us to conclude that reasonable cause existed to warrant an inquiry into Auen's competency and that the district court's failure to consider this issue during the pretrial and trial proceedings constituted an abuse of discretion.

Of course, we acknowledge that "some degree of mental illness cannot be equated with incompetence to stand trial." *Vamos*, 797 F.2d at 1150–51 (citing *Hall v. United States*, 410 F.2d 653, 658 (4th Cir.), *cert. denied*, 396 U.S. 970, 90 S.Ct. 455, 24 L.Ed.2d 436 (1969)). Where, however, a defendant consistently exhibits behavior and beliefs as bizarre as Auen did here, we feel that the court should inquire into whether the defendant in fact is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense before requiring him to proceed with trial or be sentenced. *See* 18 U.S.C. § 4241(a). We note that, during sentencing, the court responded to the government's suggestion that Auen was paranoid and that he held "irrational beliefs" concerning the tax laws, but we find that these statements concerning Auen's mental state were inadequate to satisfy the court's obligations to make specific findings after a hearing.

■ Having found that the district court erred by not making findings concerning Auen's competency to stand trial, we conclude that the appropriate remedy here is to remand this case to the district court to make such findings after conducting a hearing. *See United States v. Renfroe*, 825 F.2d 763, 767–68 (3d Cir.1987); *United States v. Nichelson*, 550 F.2d 502, 504–05 (8th Cir.1977) (per curiam); *cf. Saddler v. United States*, 531 F.2d 83, 86–87 (2d Cir. 1976) (per curiam). Although nunc pro tunc competency evaluations are disfavored, *see Renfroe*, 825 F.2d at 767; *Saddler*, 531 F.2d at 87, such a determination may still be possible, although the district court is in "the best position to determine whether it can make a retrospective determination ... of competency during ... trial and sentencing." *Renfroe*, 825 F.2d at 767 (citations omitted). Accordingly, we remand this case to the district court to consider, first, whether it can now make a meaningful determination into Auen's competency at the time of trial, and second, assuming it can, to determine whether Auen was competent. The nature and extent of the hearing it conducts on remand is left to the district court's discretion. We neither encourage nor discourage the court to obtain the assistance of psychiatric testimony or the like. We simply find it necessary for the court to make a determination concerning Auen's mental state based upon the record evidence.

In view of the foregoing, we find that it would be premature for us to decide the merits of Auen's argument concerning denial of assistance of counsel. We note, however, that at no time did Auen express-

ly waive his right to assistance of counsel, and we observe that conditioning the assignment of court-appointed attorneys on the execution of financial affidavits has been found to be improper. *See United States v. Moore*, 671 F.2d 139 (5th Cir. 1982). Nevertheless, until Auen's mental competency has been established, we have no basis for determining whether he had the present ability to waive his right to assistance of counsel, explicitly or implicitly. Accordingly, we reserve our decision on that question until (and if) this matter returns from the district court after remand.

Remanded.