983 F.2d 1079
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee
v.
Moises Pacheco CAMACHO, Defendant-Appellant.
 No. 92-30121.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 17, 1992.*
Decided Jan. 13, 1993.
 
 Before CHOY, SNEED and SKOPIL, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Defendant Pacheco-Camacho was convicted of illegally reentering this country after deportation, in violation of 8 U.S.C. § 1326. On appeal, the defendant argues that the Due Process Clause was violated by the district court's failure to order a competency hearing, and also that his legal representation was inadequate because his attorney failed to request a competency hearing. We find these arguments without merit, and we affirm.
 
 
 3
 The conviction of a defendant who is not competent to stand trial violates due process. Pate v. Robinson, 383 U.S. 375, 378 (1966). A defendant is competent to stand trial if he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and if "he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960).
 
 
 4
 Due process requires that a district court sua sponte hold a competency hearing if the judge entertains a substantial doubt as to the defendant's competence. See Hernandez v. Ylst, 930 F.2d 714, 716 (9th Cir.1991); de Kaplany v. Enomoto, 540 F.2d 975, 982-83 (9th Cir.1976) (en banc), cert. denied, 429 U.S. 1075 (1977). The question on appeal is whether a reasonable judge would have experienced doubt regarding competency. Hernandez, 930 F.2d at 716.
 
 
 5
 Generally, this court has not found a due process violation in a lower court's failure to hold a hearing unless the evidence showed "either extremely erratic and irrational behavior during the course of the trial, or lengthy histories of acute psychosis and psychiatric treatment." Boag v. Raines, 769 F.2d 1341, 1343 (9th Cir.1985) (citations omitted), cert. denied, 474 U.S. 1085 (1986). See also de Kaplany, 540 F.2d at 983 (holding that a reasonable judge would not have entertained a doubt as to competency in part because there was no psychiatric report or evidence of a history of mental illness). In Hernandez, the court affirmed the denial of a habeas petition of a defendant who testified to his "undeniably weird" belief that he had been repeatedly drugged and raped by prison personnel. Hernandez, 930 F.2d at 717-18. " '[A] defendant's bizarre actions or statements, or counsel's statement that the defendant is incapable of cooperating in his own defense, or even psychiatric testimony need not alone raise sufficient doubt.' " Id. at 718 (quoting United States v. Ives, 574 F.2d 1002, 1004 (9th Cir.1978)).
 
 
 6
 Pacheco-Camacho refers to portions of the record suggesting a lack of communication with his attorney as evidence of incompetency. For instance, at the start of the trial, the defense attorney told the court that she was not sure if the defendant wanted a jury trial and asked the court to question the defendant. Trial Transcript at 2. Although this may indicate a lack of communication, it does not mean that the defendant was incapable of rationally communicating with his attorney. The record reveals that the defendant did communicate with his attorney to some extent at other points in the trial.
 
 
 7
 The defendant also points to portions of his own testimony that arguably should have prompted the district judge to order a competency hearing. Some of the defendant's testimony was rambling and incoherent, and at times the defendant appeared confused about what he had been asked.[1] However, the defendant's muddled responses may have resulted in part from his difficulties with the English language.[2] Moreover, not all of the defendant's testimony was incoherent. At other times during the trial, the defendant seemed to understand the questioning and offered coherent responses regarding his prior felony conviction, prior deportations, and why he lived in this country and wished to remain.
 
 
 8
 While the written record does reveal several bizarre statements by the defendant, the trial judge had the opportunity to observe the defendant's demeanor and evidently did not experience any substantial doubt as to his competency. It is also significant that the defense attorney evidently did not believe her client was incompetent, since she did not request a hearing. See Hernandez, 930 F.2d at 718. Apart from the defendant's testimony, there was no other evidence relating to competency, such as psychiatric reports or evidence of a history of mental illness. We conclude that a reasonable judge would not have experienced a substantial doubt as to the defendant's competency to stand trial.
 
 
 9
 Defendant's argument that he was denied effective assistance of counsel is also without merit. This issue is ordinarily raised in habeas proceedings, and can be raised on direct appeal only "where 'the defendant's legal representation was so inadequate as obviously to deny him his sixth amendment right to counsel.' " United States v. Rewald, 889 F.2d 836, 859 (9th Cir.1989) (quoting United States v. Wagner, 834 F.2d 1474, 1482 (9th Cir.1987)), modified, 902 F.2d 18 (9th Cir.), cert. denied, 111 S.Ct. 64 (1990). Here, the defendant's representation at trial was not obviously inadequate.
 
 
 10
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The most incoherent and bizarre statements were made during the sentencing hearing. For example, after the district court asked if he had any statement to make prior to sentencing, the defendant responded as follows:
 I don't understand. I want to make decision in Hillsboro, because Hillsboro deport to Mexico in '87. So I come because I have problem in my back. I tell my lawyer, hey, deport me to Mexico when my back is injured, that's why I come in.
 * * *
 And when I went to Mexico, somebody steal my checks. My checks. I don't know who steal my checks. And then had or send me letter, hey, I find who steal your checks, but you attempted to kill. I don't know who steals my checks. Send me a letter, intent to kill. I don't intend to kill nobody. ... It's like now and then now they give me some problems, police broke, fell like broke my hand now, somebody is wrong, then anyway I feel I feel like broken. I think broken, but I feel it really pain. And then police give me more electricity, all the night, all the day. I got already loose in my skin. I need somebody investigate. I injured, somebody tried to kill me.
 Transcript of March 16, 1992 Sentencing Hearing at 10-12.
 
 
 [2]
 The defendant insisted on testifying in English and refused the aid of a translator, even though the district judge told the defendant that it was difficult to understand his testimony. Trial Transcript at 47