74 F.3d 1246
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Kenneth W. JONES, Petitioner-Appellant,
v.
Frank J. PREWITT, Jr., Commissioner of Corrections, State of
Alaska, Respondent-Appellee.
 No. 94-35934.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 7, 1995.
Decided Jan. 19, 1996.
 
 Before: HALL, WIGGINS, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 We review the district court's denial of Jones's petition for habeas corpus de novo. Sanders v. Ratelle, 21 F.3d 1446, 1451 (9th Cir.1994). We review its decision to deny an evidentiary hearing for abuse of discretion. Greyson v. Kellam, 937 F.2d 1409, 1412 (9th Cir.1989). The state court factual determination regarding competency is entitled to a presumption of correctness under 28 U.S.C. Sec. 2254(d). Collazo v. Estelle, 940 F.2d 411, 415-16 (9th Cir.1991) (en banc); Evans v. Raines, 800 F.2d 884, 887 (9th Cir.1986).
 
 
 3
 We reject the government's contention that Jones's petition should have been dismissed as mixed, under Rose v. Lundy, 455 U.S. 509, 510, 522 (1982). He sufficiently raised actual incompetency, as well as failure to hold a hearing on incompetency, in state court. In Jones v. State, 812 P.2d 613, 614 (Alaska App.1991), the Alaska Court of Appeals phrased Jones's position as "Jones contends that the trial court erred by denying his motion to continue his trial due to his medical condition." This placed Jones's actual competency at issue, not just whether the trial court should have held a hearing to find out more about his medical condition. In his Petition for Hearing to the Alaska Supreme Court, dated June 1991, Jones claimed the right violated was the right not to be put to trial while incompetent to stand trial:
 
 
 4
 The constitutional rule is simply stated--"[T]he conviction of an accused person while he is legally incompetent violates due process ..." Pate v. Robinson, 383 U.S. 375, 378 (1966); [state court citations omitted]; Amendment XIV, United States Constitution; [state constitution citation omitted].
 
 
 5
 Jones's petition, SER 22-26.
 
 
 6
 Jones argues that the state trial judge should not have allowed his trial to proceed, because of bona fide doubts about Jones's competency. Bona fide doubt, which the trial judge plainly had, compelled a hearing to determine competency. Pate v. Robinson, 383 U.S. 375, 385 (1966); De Kaplany v. Enomoto, 540 F.2d 975, 977 (9th Cir.1976); Hernandez v. Ylst, 930 F.2d 714, 716, n. 2 (9th Cir.1991). Jones got a hearing. Although he did not entitle the proceedings "hearing to determine competency," the trial judge engaged in extensive and painstaking consideration of competency, including a sua sponte order for medical examination, and consideration of multiple physicians' written and oral opinions. No more was required under De Kaplany. Although neither Jones's attorney nor the trial judge labelled this a "competency hearing," for purposes of due process, the effect was the same. Cf. Chavez v. United States, 656 F.2d 512, 519-20 (9th Cir.1981) ("While the district court did not expressly ask if Chavez had evidence concerning his competence that he wished to present, it is clear from the record that the court was inquiring into the competence question and seeking all pertinent information.... [Chavez] was not denied an opportunity to explore or rebut the basis for the finding of competence.")
 
 
 7
 The more substantial issue is the substantive one, whether Jones's medical condition made him incompetent to stand trial when he did. The condition was not, as with mental retardation and some kinds of mental illness, one which could be expected to be unchanged for the rest of Jones's life, so Jones had a serious claim for a right to continuance. This was the third continuance requested for medical reasons. Jones needed surgery for an injury unrelated to the crime. But once he got to Alaska for his trial, Jones himself wanted to proceed with trial rather than go back to Oregon and accept further delay. The case had to be tried sometime, and it had already waited more than three years from indictment.
 
 
 8
 The trial judge adequately considered his own extensive observations of Jones, the testimony of two physicians and the reports of three, and defense counsel's representations about his ability to work with Jones on his defense. He also considered Jones's personal expressions of a desire to proceed and get the trial over with.
 
 
 9
 The test of competency, for federal habeas purposes, is "whether [defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960); Hernandez, 930 F.2d at 716, n. 2. The Alaska Court of Appeals found the question of Jones's competence difficult, as we do, but decided that the trial judge's superior opportunity to observe and evaluate Jones as well as the witnesses, and the physicians' testimony, justified deferring to the trial judge's finding that it was appropriate to proceed. Jones, 812 P.2d at 617.
 
 
 10
 Like the Alaska Court of Appeals, we do not agree that Dr. Voke's specialty in orthopedic surgery deprived his opinion of foundation. Nor did the qualification he made to his oral opinion. Jones suffered from the sequelae of back surgery, which fell squarely within Dr. Voke's experience and training. His medical condition was orthopedic, and the mental consequences of medications taken were in connection with orthopedic surgery. That Dr. Voke was an orthopedic surgeon, rather than a psychiatrist, probably gave him more rather than less knowledge of patients in Jones's condition.
 
 
 11
 Jones also argues that "failure to comply with AS 12.47.100 compounds the due process violation." "[A]lleged violations of state law per se are not cognizable in a federal habeas corpus petition," unless they rise to the level of a constitutional violation. Hernandez, 930 F.2d at 719. Assuming arguendo that the trial judge violated the statute by having Jones examined by an orthopedic surgeon rather than a psychiatrist, this does not rise to the level of constitutional violation.
 
 
 12
 Jones argues that the district court erred when it refused to hold an evidentiary hearing on Jones's "actual incompetency" claim. A habeas corpus petitioner is entitled to an evidentiary hearing "if he has alleged facts which, if proven, would entitle him to relief and he did not receive a full and fair evidentiary hearing in a state court." Norris v. Risley, 878 F.2d 1178, 1180 (9th Cir.1989) (citing Townsend v. Sain, 372 U.S. 293, 312-13 (1963)). An evidentiary hearing is not required if the state court record is adequate for the federal court to review the petitioner's allegations and ascertain the facts supporting those allegations. Bashor v. Risley, 730 F.2d 1228, 1233 (9th Cir.1984). In this case, it was.
 
 
 13
 Though the question of how to try a man in Jones's condition was and is difficult, the presumption of correctness of the state court's implicit finding of competency is not rebutted. By the time Jones testified, he was taking nothing stronger than Motrin, and his attorney stated that he was clear-headed at that time. Earlier in the trial, he had been taking Tylox and Valium, which would tend to impair his competence more.
 
 
 14
 When the court spoke with Jones's treating physician in Oregon, Dr. Bert, in reference to the motion to reconsider, Dr. Bert stated that the medications Jones was taking "are powerful drugs, and certainly would slow one's thought process" and could effect his ability to pay attention. [ER 78-80] Still concerned after denying the motion to continue, the court ordered an independent examination by Dr. Voke. Dr. Voke indicated that Jones had told him he wanted to stand trial. He also stated that Jones was "mentally alert and he answered the questions without any problem at all" during the interview, and concluded that there would be no problem with Jones standing trial despite the medication. He expressed some hesitation about the "mental part" but in his written report stated that "I felt his medication would not deter him in any way as far as this trial is concerned. It certainly did not pose a problem during this independent medical evaluation. I felt he was quite lucid and able to respond quite adequately." [AER at 3]
 
 
 15
 During trial, Jones's condition worsened. His attorney asked that trial be delayed for a period of time so that Jones could be withdrawn from the stronger medication prior to testifying. The judge granted this request, and delayed trial for a week. It actually resumed two weeks later.
 
 
 16
 There was evidence tending to show that Jones was not competent to stand trial. Dr. Garnett, a general practitioner, testified that Jones's medications had a "sedating effect. They decrease a person's ability to think and concentrate." [ER 138] Dr. Garnett stated that the medication could make a person drowsy, confused, and disoriented, and even cause hallucinations. [ER 195] He did not say that Jones had these problems. He also said "I don't know whether I can testify as to its effect on his competency" in general, but that there may be problems with testifying. [ER 1382] He also stated that the "presence of severe pain definitely has an effect on a person's ability to concentrate" [ER 199] but did not discuss how strong an effect pain had on Jones's ability to concentrate. He agreed on cross-examination that there was a possibility that Jones "would handle it [testifying] very well" and be able to "testify in a coherent manner." [ER 207] But the judge fully considered this testimony, and balanced this testimony by a general practitioner against the testimony by an orthopedic surgeon. We cannot say that he was constitutionally required to rule the other way.
 
 
 17
 When trial resumed for Jones's testimony, Jones's attorney said that Mr. Jones "is not using drugs, except for Motrin" and "seems to be pretty clear headed." [ER 234] Medical records from the time of the September hospitalization show that Jones wanted to testify and be done with the trial. [ER 245-51]
 
 
 18
 In United States v. Robinson, 530 F.2d 677, 679 (5th Cir.1976), the court conceded that "[i]n some circumstances, of course the influence of drugs ... on a defendant could be sufficiently debilitating to reach the level of incompetency under the Dusky test," but concluded that the trial court had been careful to insure that that had not happened. The trial judge in this case was likewise sufficiently careful to insure that Jones was able to be tried.
 
 
 19
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3