**UNITED STATES of America, Appellee,**

v.

**Mark Steven SOVIE, a/k/a Mark Beashaw, Defendant–Appellant.**

No. 614, Docket 96–1276.

United States Court of Appeals, Second Circuit.

Argued Dec. 2, 1996.

Decided Aug. 18, 1997.

---

J. Scott Porter, Syracuse, NY, for Defendant–Appellant.

Charles E. Roberts, Assistant United States Attorney, Northern District of New York, Syracuse, NY (Thomas J. Maroney, United States Attorney, Northern District of New York, of counsel), for Appellee.

Before WINTER, Chief Judge, OAKES and NEWMAN, Circuit Judges.

WINTER, Chief Judge:

Mark Steven Sovie appeals from his conviction after a jury trial before Judge Pooler. The jury convicted Sovie of violating 18 U.S.C. § 875(c) by threatening his former girlfriend, Sherry Dominie, and her son, Ricky, in a series of interstate phone calls made on May 5, 1995. The jury acquitted Sovie on a second count charging a violation of the same law through a series of phone calls made on May 6, 1995. We affirm Sovie's conviction. However, we vacate the six-level enhancement under U.S. Sentencing Guideline § 2A6.1(b)(1) for evincing an intent to carry out threats and remand for resentencing.

## BACKGROUND

Sovie's arrest on May 15, 1995, marked the end of a five-year period during which he and Dominie had a relationship that both parties have referred to as an "odyssey of abuse." The couple began dating in 1990, with Sovie first beating Dominie on her birthday, one month after they met. A pattern in which the two moved from state to state developed. At each locale, Dominie would report physical abuse to local police and would try to separate from Sovie. Inevitably, Sovie would find her, they would reunite, and the two would then move on to another state to allow Sovie to avoid pending abuse charges. They lived in Wyoming, Oregon, California, Minnesota, Montana, New York, and Florida. In September 1994, Dominie broke up with Sovie and moved back to her home in St. Lawrence County, New York. However, they continued to talk by telephone, with Sovie threatening to beat and kill her. The couple also spent nearly a week together in December 1994. The threatening phone calls continued—sometimes as many as 40 to 50 calls a day. Finally, in April 1995, Dominie reported the calls to the FBI.

On May 5, 1995, FBI Agent Timothy Dwyer provided Dominie with a tape recorder and two cassette tapes. On that day and the next, Dominie recorded four and a half hours of conversation involving 22 separate phone calls. At the time of the calls on May 5 and 6, Sovie was in Florida and sought to persuade Dominie to join him there. The persuasion was not friendly and included passages such as the following threat by Sovie:

> Either get on the bus in the mornin' or you're gonna find somebody dead up there in New York.... You're gonna be dead and in a fuckin' casket....Sherry you're a dead motherfucker. You're just a walkin' dead woman.... No, Sherry. You ain't on that bus, I'm gonna kill you. Got it? One way or another. You're dead.

Sovie also threatened Dominie's son, Ricky, during the May 5 calls:

> Ricky I'm gonna fuckin' hurt you so motherfuckin' bad you're gonna wish you were dead! You understand me.... Rick, I'll pound you right to fuckin' death you keep stickin' your nose in my business! ... You get ready for a beatin' of your fuckin' life.

On May 10, 1995, federal agents obtained an arrest warrant for Sovie. However, they could not locate him and instructed Dominie to tell Sovie that she wanted to meet with him. She arranged with Sovie to meet on May 15 at the Greyhound bus station in Syracuse, New York. On that day, Sovie altered the plans and called the bus company to state that he would meet Dominie at the

Greyhound station in Watertown, New York. FBI agents arrested Sovie one block from the Watertown station.

At trial, the tapes were played for the jury, and Sovie was convicted under 18 U.S.C. § 875(c) for the threats made during the May 5 calls. Judge Pooler sentenced Sovie to 55 months imprisonment, to be followed by three years of supervised release. The sentence included a two-level enhancement for obstruction of justice pursuant to Guideline § 3C1.1 and a six-level enhancement for conduct evincing an intent to carry out a threat pursuant to Guideline § 2A6.1(b)(1).

### DISCUSSION

On appeal, Sovie challenges his conviction and sentence on the grounds that: (i) the recorded statements do not constitute "true threats" conveying the "imminent prospect of execution," as required by caselaw interpreting Section 875(c); (ii) the district court erred in admitting evidence that Sovie had abused two former wives; (iii) the district court erred in not including a provocation defense in its charge to the jury and/or in not allowing Sovie to raise this defense during trial; (iv) the tape recordings were improperly admitted because of alleged tampering, and/or the scope of testimony concerning tampering was improperly restricted; (v) the multiple threats made over the course of May 5 and 6, 1995, were improperly grouped in two counts; (vi) the district court improperly rejected a request that Sovie undergo an examination to determine whether he was competent to stand trial; and (vii) both sentencing enhancements were erroneous.

#### A. *Sovie's Statements as "True Threats"*

■ Section 875(c) provides:

Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both.

■ Under our caselaw, it is not enough to show the use of language that is literally threatening. Rather, to support a conviction, the government must show a "true threat," one that "on its face and in the circumstances in which it is made is so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution." *United States v. Kelner*, 534 F.2d 1020, 1027 (2d Cir.1976). "The test is an objective one—namely, whether an ordinary, reasonable recipient who is familiar with the context of the [threat] would interpret it as a threat of injury." *United States v. Malik*, 16 F.3d 45, 49 (2d Cir.1994) (internal quotation marks and citation omitted) (interpreting 18 U.S.C. § 876, companion statute to Section 875(c) that proscribes threats mailed via U.S. Postal Service). Finally, it is "not necessary for the Government to prove that [the defendant] had a specific intent or a present ability to carry out his threat, but only that he intended to communicate a threat of injury through means reasonably adapted to that purpose." *Kelner*, 534 F.2d at 1023 (citation omitted).

Sovie argues that the threats contained in the May 5 phone calls are not "true threats" because they lacked the necessary immediacy. However, the evidence was sufficient to allow the jury to conclude that Sovie's threats did convey "an imminent prospect of execution." *Kelner*, 534 F.2d at 1027. For example, referring to his demand that Dominie take a bus to Florida the very next day, Sovie said, "You ain't on the bus, I'm gonna kill you. Got it?"

Sovie also argues that the volatile nature of Sovie's and Dominie's relationship, which involved the mutual use of violent and abusive language, undermines the seeming immediacy of the May 5 threats. However, although the jury might have reached that conclusion, it could also reasonably conclude the opposite, particularly given the history of actual physical abuse of Dominie by Sovie. For example, it is undisputed that Sovie "beat Dominie at least once a week for almost five years," Brief of Appellant at 7, a history that would justify any reasonable person, aware of the context, not taking the May 5 threats lightly. In short, there was sufficient evidence that Sovie's statements were "true threats" under Section 875(c).

## B. *Evidence of Sovie's Abuse of Other Women*

At trial, Sovie's two ex-wives testified about the physical abuse and battering they had suffered during their respective relationships with him. Sovie argues that the testimony was improperly admitted because it was not relevant to the charges in the instant case. However, Dominie testified that Sovie had informed her of his abuse of his prior wives. Her testimony tended to prove two critical elements of the crime: first, that Dominie reasonably perceived Sovie's phone calls as true threats, *see Malik*, 16 F.3d at 49; *see also United States v. Aman*, 31 F.3d 550, 553 (7th Cir.1994) (defining threat requirement of Section 876 as "a statement in the context or under circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates a statement as a serious expression of an intention to inflict bodily harm") (internal quotation marks and citation omitted); and, second, that Sovie intended to "communicate a threat of injury," *Kelner*, 534 F.2d at 1023. The testimony of the former wives that such abuse actually occurred importantly corroborated Dominie's testimony regarding what Sovie had told her about that abuse, and it was not an abuse of discretion for the district court to admit the testimony of Sovie's ex-wives.

## C. *The Provocation Defense*

Sovie claims that Dominie provoked his threats by threatening Sovie himself in numerous conversations, including the ones on May 5 and 6, 1995. From this factual premise, Sovie argues that the district court erred by not including a "provocation defense" in the jury charge and by not allowing defense counsel to argue the provocation defense to the jury.

Insofar as Sovie claims that provocation is a justification or excuse constituting a legal defense to the crime, we disagree. In discussing the defenses of duress and necessity, the Supreme Court has noted that "[u]nder any definition of these defenses one principle remains constant: if there was a reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm,' the defenses will fail." *United States v. Bailey*, 444 U.S. 394, 410, 100 S.Ct. 624, 634, 62 L.Ed.2d 575 (1980) (quoting LaFave & Scott, *Handbook on Criminal Law* 379 (1972)). Sovie clearly had alternatives to threatening Dominie and her son, and provocation by Dominie was, therefore, not a legal justification or excuse for Sovie's criminal conduct.

To the extent that Sovie's provocation argument is the narrower claim that Dominie's own threatening and provocative behavior negated any fear of Sovie on her part, there was no error. Sovie was allowed to introduce evidence supporting this theory and to argue it to the jury. The district court allowed the defense to introduce a conversation between Sovie and Dominie recorded by Sovie when he was in Wisconsin in April 1995. During that conversation, Dominie said many things, including:

> I'm going to show up with a gun and I'm going to put a bullet in the back of your head.... I'll get even with you if it takes me till the day I die.... I got Mafia friends in PA. I got Mafia friends in Minnesota. I got Mafia friends in Chicago.... I could blow your brains out from back here and get away with it.

Sovie also claimed that certain provocative statements made by Dominie during the May 5 calls were either erased or not recorded. In addition, the defense introduced telephone records to show that Dominie had called Sovie repeatedly in Wisconsin. For example, Dominie called Sovie 19 times on April 26, 1995.

Sovie used this evidence precisely to argue to the jury that his May 5 statements did not violate Section 875(c) because the couple constantly provoked each other with threats that neither took seriously. For example, on summation, Sovie's counsel referred to Dominie's threat to blow Sovie's brains out and Sovie's reaction to it, namely, laughter. Sovie's lawyer then argued: "Well, they never took each other seriously. That was the point, that was the whole relationship." So-

vie's counsel pressed this theme throughout his summation:

> [Sovie] is not anticipating that this person is afraid of h[im] because this is how they interact all the time. And for Sherry Dominie now to come in to say I'm terrified of Mark Sovie and I didn't want to have any contact with him, her story doesn't even make sense at times.... Look at the phone records. She's the one calling him. Calling him repeatedly. This is a man supposedly she is so terrified of and she's telling you she is so afraid of. The mind-set is the same as Mark's. They've got this strange relationship and they don't really consider these things threats. This in their mind-set [is] not a true threat.

Therefore, Sovie was allowed to, and did, argue that Dominie's provocation created circumstances in which Sovie's statements were not true threats. However, the jury was entitled to, and did, conclude otherwise.

D. *Evidence of Tampering with the Recordings*

■ Initially, Sovie did not contest the introduction of the tape-recorded conversations of May 5 and 6, 1995. However, Philip Bray, who was dating Dominie at the time and was with her during some of the calls, testified that Dominie had turned off the recorder in the middle of conversations. Sovie also claims that Dominie erased portions of the tape in which she was provoking Sovie. Based on the alleged tampering and erasures, Sovie objected to admission of the tapes.

The district judge admitted the tapes, and a defense expert was allowed to testify to the possible significance of various clicks heard on the tapes. The judge also listened to the tapes herself. In a post-verdict motion denying a new trial, she stated:

> After reviewing the entire tape transcript as well as listening to the audiotapes themselves, I found that the taped conversations contained no breaks in meaning to indicate that anyone had turned the recorder off, made a provocative statement, and then turned the recorder on again to preserve Sovie's reaction.

*United States v. Sovie*, No. 95–CR–195(RSP), 1996 WL 31175, at *2 (N.D.N.Y. Jan.24, 1996).

The district court correctly held that the allegations of tampering went to the weight of the evidence rather than to its admissibility. *Id.* at *3 (citing *United States v. Fuentes*, 563 F.2d 527, 532 (2d Cir.1977); *United States v. Knohl*, 379 F.2d 427 (2d Cir.1967)). *Fuentes* is particularly relevant. Rejecting the defendant's request to exclude a recording because of alleged tampering, we noted that it was "hard to believe that [a government informant] could have effectively changed the character of a running conversation, by turning the device on and off, without such attempts being immediately obvious to ... anyone listening to the tapes." *Fuentes*, 563 F.2d at 532.

■ In any event, the defense in the instant case was allowed to develop testimony related to the alleged tampering and to argue to the jury that the tapes may have been incomplete.[1] *See Knohl*, 379 F.2d at 441 (holding that district court did not abuse discretion by admitting allegedly incomplete tapes. "[T]he jury, after hearing testimony and arguments relative to the reliability and accuracy of the tape and under proper instructions from the court, reached its own conclusion on that issue."). Because the is-

---

**1.** Sovie also argues that although a defense expert was permitted to testify about certain clicks heard on the tape, the scope of the defense expert's testimony was improperly restricted. The expert, William Cooper, was allowed to testify that six of eighteen clicks heard on the tapes occurred in the course of conversations, rather than between conversations. He testified that this indicated that the tape recorder was turned off-and-on six times during conversations. However, Cooper was not allowed to testify that there were erasures on the tape because he could not opine that the tapes were new when given to Dominie. If the pertinent tapes had not been new, then any erasures he detected might have been made during or after a prior use, not by Dominie. It was not an abuse of discretion for the district court to rule that Cooper's testimony with respect to erasures would have been speculative, confusing to the jury, and overly prejudicial.

**128**

sue is one of weight rather than admissibility, the court properly left it to the jury.

### E. *Aggregation of the Threats in Two Counts*

Sovie claims there is no assurance that the jury unanimously agreed that any particular portion of the May 5 call constituted a "true threat" because the government aggregated the hundreds of threats in the calls into two counts based on the May 5 and May 6 conversations respectively, instead of charging each threatening sentence as a separate count. Sovie did not make this claim in the district court, and we would have to find plain error in order to reverse.

We believe that Sovie's argument lacks merit. As noted, Section 875(c) requires that threatening language be a "true threat." The seriousness of threatening language often turns on the context of various statements, including the relationship of one threat to another, repetition, and other statements near or at the time of the threats. It was, therefore, reasonable—if not essential—to group calls together. We do not, of course, foreclose the giving of an instruction upon an appropriate request—not made in the instant case—indicating the need for jury unanimity regarding which particular statement constituted a "true threat."

### F. *Failure to Conduct a Mental Health Examination*

The district court did not err in denying Sovie a mental health examination to determine whether he was competent to stand trial. The court need hold a competency examination only if there is "reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a) (1994). It is within the court's discretion to determine whether such cause exists. *United States v. Vamos,* 797 F.2d 1146, 1150 (2d Cir.1986).

The district court denied the motion after personally observing that Sovie was a knowing participant in his defense. He took notes, conversed with counsel, and reacted reasonably to the admission of evidence. Sovie's counsel argues that Sovie may have a "split personality" but has provided no evidence to support such a conclusion. Counsel also argues that various of Sovie's attempts to contact Dominie after the indictment jeopardized his defense and, therefore, show that he was incompetent to assist in his defense. However, as discussed *infra,* Sovie tried to contact Dominie to coerce her into dropping the charges. While this action may have hurt his defense, it is conduct indicating that Sovie well understood the nature and consequences of the proceedings against him. We therefore see no error in the determination that Sovie was competent to stand trial.

### G. *The Two–Level Enhancement for Obstruction of Justice*

The district court imposed a two-level enhancement for obstruction of justice pursuant to Sentencing Guideline § 3C1.1. The enhancement was based on letters Sovie wrote to Dominie from jail. In the letters, he offered to pay for her son's schooling if she dropped the charges, reminded her of a $1,000 "reward" for information leading to the charges being dropped, and threatened her with imprisonment if she continued to pursue charges against him. The district court followed the recommendation of the Presentence Investigation Report ("PSR") and imposed a two-level enhancement.

In reviewing such an enhancement, the factual findings of the district court cannot be overturned unless clearly erroneous, and an appellate court must give "due deference to the district court's application of the guidelines to the facts." *United States v. Kirsh,* 54 F.3d 1062, 1072 (2d Cir.1995) (internal quotation marks omitted). Sovie's challenge to the enhancement is entirely meritless. Application Note 3(a) to Section 3C1.1 gives as an example of qualifying behavior "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." Sovie's letters were not pleas from a purportedly innocent man to Dominie asking her to tell the truth. Rath-

er, he offered her money and made threats to induce her to drop the charges without any pretense of innocence. The enhancement was therefore proper.

## H. *Six–Level Enhancement for Intent to Carry Out a Threat*

██ The district court also imposed a six-level enhancement pursuant to Guideline § 2A6.1(b)(1), which states: "If the offense involved any conduct evidencing an intent to carry out such threat, increase by 6 levels." In interpreting this provision, we have held: "To trigger this section, the conduct proffered as probative of such an intent must have occurred 'either contemporaneously with or after the threat.'" *Kirsh*, 54 F.3d at 1073 (quoting *United States v. Hornick*, 942 F.2d 105, 108 (2d Cir.1991)).

The PSR recommended the enhancement based on police reports that, after Sovie was arrested and detained pre-trial, he had offered a fellow inmate $5,000 to kill Dominie. The PSR's recommendation was also based on the history of physical abuse of Dominie. In his objections to the PSR, Sovie denied that he had offered anyone money to kill Dominie and requested an evidentiary hearing to resolve that factual dispute. The district court decided not to rely on the alleged jailhouse conversations and thus denied the request for a hearing. Based on *Kirsh*, the court also recognized that it could not rely on behavior prior to the threats for which Sovie was convicted, such as the history of abuse, to support the enhancement.

Nevertheless, the district court imposed the six-level enhancement, relying on evidence in the trial record concerning the circumstances of Sovie's arrest. The court reasoned that Sovie's arrest in Watertown, where Sovie expected to meet Dominie, coupled with the fact that Sovie knew Dominie's address and phone number, even after she had changed the latter, provided sufficient evidence to conclude that Sovie had come to meet Dominie with "the intent to carry out the threats." Although a district court's finding of facts at sentencing can be overturned only if clearly erroneous and due deference must be given to a sentencing court's application of the guidelines, *Kirsh*, 54 F.3d at 1072, we believe that the evidence relied upon by the district court is insufficient as a matter of law to support the six-level enhancement.

Sovie arranged to meet Dominie at the Syracuse bus station on May 15, 1995, because FBI agents had instructed her to lure him there. Sovie altered this plan and informed the bus company that he would meet Dominie at the Watertown bus station. What is lacking is any evidence that the arranged meeting was the fruit of Sovie's seeking out Dominie to carry out his threats. The meeting was on Dominie's initiative, not Sovie's. He knew where Dominie lived but had made no attempt at personal contact prior to Dominie's invitation. Sovie's presence in Watertown, which is some sixty miles from Dominie's residence, was, therefore, as consistent with his seeking reconciliation as with his seeking to carry out the May 5 threats.[2]

The court also relied upon Sovie's possession of Dominie's address and phone number as evidence of his intent to carry out his threats. Possession of those items may be relevant to such an intent but by itself is not sufficient to prove it. Although in possession of that information, Sovie did not use it to proceed to Dominie's house immediately or soon after the May 5 conversations. Rather, he traveled to Watertown only when Dominie asked him to meet her. There is no additional information in the record regarding Sovie's possession or use of the address and phone number probative of his intent to carry out the May 5 threats.

As noted, the district judge ruled that she would rely upon the trial record rather than

2. The sentencing colloquy indicates that when Sovie learned of the district judge's reliance upon his presence in Watertown on May 15 as a ground for the six-level enhancement, rather than the grounds suggested by the PSR, Sovie sought to prove that he had been in the same town as Dominie the day before without approaching or harming her. He asked for a factual hearing on this issue, a request denied by the court. Because we regard the evidence relied upon by the court to support the enhancement as insufficient as a matter of law, we need not remand to allow Sovie to provide evidence of his harmless proximity to Sovie on May 14.

hold an evidentiary hearing regarding the alleged jailhouse attempt to hire someone to kill Dominie. We need not remand for further factfinding, however, because that solicitation, even if verified, would not support the enhancement. The conversations in question occurred after Dominie lured Sovie to agents with a warrant for his arrest and after she continued to press charges against him. Sovie's seeking of a killer at that point can hardly be connected to the May 5 threats rather than to the new and far more serious grievances he then harbored against Dominie.

## CONCLUSION

In sum, we find Sovie's challenges to his conviction to be without merit and affirm it. We also affirm the sentencing court's imposition of a two-level enhancement for obstruction of justice pursuant to Guideline § 3C1.1. However, we vacate the imposition of the six-level enhancement for evincing an intent to carry out a threat pursuant to § 2A6.1(b)(1) and remand for resentencing.