18-2053-cr
United States v. DiMartino

# United States Court of Appeals
# for the Second Circuit

AUGUST TERM 2019
No. 18-2053


UNITED STATES OF AMERICA,
Appellee,


v.


TERRY DIMARTINO,
Defendant-Appellant.


ARGUED: SEPTEMBER 26, 2019
DECIDED: FEBRUARY 4, 2020


Before:      JACOBS, SACK, HALL, Circuit Judges.

Terry DiMartino appeals from the judgment of the United States District Court for the District of Connecticut (Thompson, J.) sentencing him to 70 months' imprisonment for tax offenses.   On appeal, DiMartino argues that the district court abused its discretion by denying his post-trial request for a competency hearing based chiefly on his adherence to the Sovereign Citizen movement.   The

1

government argues that the district court properly determined that the psychologist's report tendered by DiMartino was unreliable, and that the trial record reflects DiMartino's understanding of the charges against him and his meaningful participation in his defense.

We AFFIRM.

_____

CHARLES E. MCFARLAND, New Castle, KY, for Defendant-Appellant Terry DiMartino.

ELISSA HART-MAHAN (Richard E. Zuckerman, S. Robert Lyons, Stanley J. Okula, Jr., Alexander P. Robbins, on the brief), United States Department of Justice, Washington, DC, for Appellee United States of America.

DENNIS JACOBS, Circuit Judge:

Terry DiMartino appeals from a judgment of the United States District Court for the District of Connecticut (Thompson, J.) convicting him for his multi-year failure to pay taxes and for his deception and obstruction of the IRS--conduct inspired by the Sovereign Citizen movement, a loosely affiliated group who "'follow their own set of laws' and, accordingly, 'do not recognize federal, state, or local laws, policies or regulations' as legitimate." United States

v. McLaughlin, --- F.3d ---, 2019 WL 7602324, at *1 n.1 (2d Cir. December 30, 2019) (quoting Sovereign Citizens: A growing Domestic Threat to Law Enforcement, FBI Law Enforcement Bulletin (2011)). DiMartino, a successful insurance agent, represented himself at trial and was convicted.

After trial and before sentencing, DiMartino retained counsel, who moved for a hearing to determine whether DiMartino had been competent to stand trial. Counsel argued that DiMartino's bizarre conduct before and during trial raised a series of red flags impugning his mental fitness, and submitted a psychological report from Dr. Andrew Meisler, who had interviewed DiMartino and examined part of the trial record.

The district court held a Daubert hearing to enable it to determine whether Dr. Meisler's proffered expert testimony "rest[ed] on a reliable foundation and [was] relevant to the task at hand." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589, 597 (1993). After the hearing, at which the government and counsel for DiMartino each had the opportunity to examine Dr. Meisler, the district court denied DiMartino's request for a competency hearing. The district court ruled that: [1] the psychological report--which concluded that DiMartino was suffering from a delusional disorder, but largely ignored the Sovereign

3

Citizen context--was unreliable; and [2] DiMartino's behavior, observed by the court before and during trial, indicated that DiMartino understood the charges against him and participated meaningfully in his defense.

The court entered final judgment sentencing DiMartino to 70 months' imprisonment. DiMartino appeals. We have not previously considered the competency of a self-identified Sovereign Citizen in a published opinion; and in a prior case dealing with a tax skeptic we remanded for a competency hearing. See United States v. Auen, 846 F.2d 872, 877-79 (2d Cir. 1988). Here, however, we agree with the district court that DiMartino's actions and statements did not in themselves constitute reasonable cause to doubt his competency. The denial of his request for a competency hearing therefore was not an abuse of discretion.

The judgment of the district court is affirmed.

**I**

"We derive the following facts from the evidence adduced at trial, which we describe in the light most favorable to the Government, the prevailing party." United States v. Caltabiano, 871 F.3d 210, 213 (2d Cir. 2017) (citation omitted). From the early 1980s, DiMartino earned substantial commissions as an

4

independent insurance agent. Beginning with the 1996 tax year, coincident with DiMartino's divorce, he consistently failed to file accurate tax returns, or filed no returns at all. For example, in 1999, he falsely filed a "zero return" for the 1997 tax year. From 2000 on, DiMartino received numerous delinquency notices from the IRS.

When the IRS filed liens against DiMartino's property and sought to garnish his commissions, he took steps to evade and obstruct. For instance, he acquired a home through a trust that obscured his ownership and directed insurance companies to divert his commissions to nominee companies he created and controlled.

In addition to these schemes, DiMartino sent a steady stream of correspondence to the IRS claiming that the federal government lacks legal or constitutional authority to collect taxes. Sometimes, DiMartino threatened legal action against the IRS officer responsible for his case; at other times, he proffered counterfeit bonds to satisfy his tax liabilities. In response, the IRS repeatedly sent educational materials debunking many of his arguments, which the IRS had encountered before.

DiMartino was successful, for a time. From 2004 to 2013, when

DiMartino earned more than $2.4 million in commissions, the IRS was able to recoup only $32,000, less than 1.5% of his income. He also managed to evade at least $100,000 in state taxes during this period. However, he kept up his property taxes, default on which would likely result in seizure of his home.

In 2014, DiMartino was charged with one count of corruptly endeavoring to obstruct the IRS, two counts of filing false tax returns, and five counts of willful failure to file tax returns. DiMartino invoked his right to represent himself at trial and testified at a lengthy Faretta hearing, see Faretta v. California, 422 U.S. 806 (1975), held to determine whether his waiver of his right to counsel was knowing and voluntary. DiMartino testified that he was in good health, that his mind was clear, and that he was not under the care of a psychiatrist. He described his education and professional experience; his personal study of Supreme Court cases and the U.S. Constitution; and his familiarity with the statutes and regulations that govern the insurance industry. The district court ruled that DiMartino knowingly, voluntarily, and intelligently waived his right to counsel. Standby counsel was appointed to assist him.

At trial, DiMartino argued that he did not intend to violate the law and did not know that the fraudulent documents he signed were illegal. He explained

6

his theories that: the IRS and Department of Justice are private corporations; he was not subject to the court's jurisdiction; and the laws requiring him to pay taxes were nonexistent or invalid. In one instance, when the court cautioned DiMartino against making statements of law, DiMartino clarified that he was only offering his own "interpretation"--ostensibly in support of his defense that, at the time of the alleged offenses, he had a good faith belief that his actions were legal.

DiMartino's closing statement emphasized that his views were based on years of study and deliberation:

> This is not an act. I'm not crazy. . . . All that evidence you saw really just points to how committed I was the entire 20 years. Did you see how many documents I submitted? Did you see how many classes I attended? Did you see how much money and effort I spent to find the truth? That wasn't circumstance. That was me digging in to find what's really real.

App'x 38. DiMartino's defense was unsuccessful: the jury delivered a verdict convicting him on all counts.

Approximately one month after the filing of the final Presentence Investigation Report (the "PSR"), DiMartino retained counsel. Several months later, defense counsel submitted a motion asking the court to order a

7

psychological evaluation and hold a competency hearing pursuant to 18 U.S.C. § 4241.   Accompanying the motion was a psychological report prepared at counsel's request.   Dr. Andrew Meisler, who had conducted several interviews with DiMartino, concluded that he was suffering from a delusional disorder.   In addition, counsel submitted his own affidavit summarizing the bases for his concerns about his client's competency, focusing on DiMartino's "bizarre theories."   App'x 152.   For example, counsel averred that, notwithstanding the conviction, DiMartino "still thinks he should be released at sentencing because the IRS and the United States government are private corporations."   App'x 155.

In January 2017, the district court held a hearing to examine the reliability of Dr. Meisler's report (and to determine whether there was reasonable cause to hold a competency hearing).   The government and counsel for DiMartino examined Dr. Meisler about his report's conclusions and the methods employed in preparing it.   The court also heard testimony from Dr. Howard Zonana, who, at the court's invitation, advised the court on the proper methodology for diagnosing delusional disorder in such cases.

The request for a competency hearing was denied.   The court's June 28, 2018 ruling highlighted methodological flaws in Dr. Meisler's report and

8

accorded it no weight. The court set forth its own observations of DiMartino, reviewed the full record, and concluded that there was no reasonable cause to believe that DiMartino did not understand the nature and consequences of the proceedings against him.

## II

The denial of a motion to hold a competency hearing is reviewed for abuse of discretion. United States v. Arenburg, 605 F.3d 164, 169 (2d Cir. 2010). In exercising its discretion, the district court must "make findings on the record concerning the defendant's competency where the facts presented to the court warrant such an inquiry." United States v. Auen, 846 F.2d 872, 878 (2d Cir. 1988).

On appeal, DiMartino argues that the district court abused its discretion by overlooking certain red flags in DiMartino's behavior, and that it should have been obvious that DiMartino was mentally incompetent to stand trial. But the record supports the conclusion that DiMartino's words and actions reflected his anti-government political views and legal theories rather than an inability to understand the proceedings against him. Therefore, we conclude that it was

9

not an abuse of discretion for the district court to deny his request for a competency hearing.

Section 4241(a) safeguards the constitutional due process rights of criminal defendants by requiring district courts to hold a competency hearing if, at any time prior to sentencing, "there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 28 U.S.C. § 4241(a).

Whether "reasonable cause" to hold a hearing exists is a highly particularized assessment that "varies in each case." United States v. Zhou, 428 F.3d 361, 379 (2d Cir. 2005) (quoting United States v. Nichols, 56 F.3d 403, 414 (2d Cir. 1995)) (internal quotation marks omitted). Among relevant considerations are psychiatric reports assessing the defendant's competence, see Zhou, 428 F.3d at 379, and the court's own "observations of the defendant's demeanor during the proceeding," United States v. Quintieri, 306 F.3d 1217, 1233 (2d Cir. 2002). The court must remain alert to issues of competence throughout a criminal proceeding. That obligation "takes on increased significance where, as here, a

10

criminal defendant elects to proceed pro se." Arenburg, 605 F.3d at 169.

Counsel for DiMartino points to a series of his clients' actions and statements that he characterizes as irrational. These red flags include, most notably: DiMartino's refusal to prepare an accurate tax return prior to sentencing; his stated beliefs that his prosecution and the tax laws underlying it were illegitimate; his decision to make duplicative and obviously inaccurate or meritless filings with the IRS and with the court; and statements during trial that indicated continuing adherence to meritless legal theories.[1]

In some instances, DiMartino's statements in court may well have been the result of genuine confusion about certain legal doctrines; when for example he asked the district court whether it followed "the Connecticut and Federal Rules of Civil Procedure." App'x 120. But a defendant's "technical legal knowledge, as such, [is] not relevant to an assessment of his knowing exercise of the right to defend himself." Faretta, 422 U.S. at 836; see also McCoy v. Louisiana, 138 S. Ct. 1500, 1507 (2018) ("[A]n accused may insist upon representing herself--however

---

[1] Counsel for DiMartino also points to the conclusions in Dr. Meisler's psychological report as an additional red flag; but the district court reasonably concluded that Dr. Meisler's conclusions were not reliable, as discussed in Part III of this opinion.

11

counterproductive that course may be.") (citing Faretta, 422 U.S. at 834).

Here, the district court reasonably inferred from DiMartino's conduct at trial that he understood the proceedings against him and was capable of participating meaningfully in his defense. Among other things, DiMartino attempted to persuade the jury that he lacked the requisite criminal intent; he solicited the jury's sympathy; and he made a bid for jury nullification. Lesser participation has sufficed to demonstrate competency. See U.S. v. Sovie, 122 F.3d 122, 128 (2d Cir. 1997) (noting that district court's conclusion that defendant was a "knowing participant in his defense" was supported by the fact that the defendant "took notes, conversed with counsel, and reacted reasonably to the admission of evidence").

Crucially, nearly all the purported red flags concerning DiMartino's competence relate in one way or another to his insistence on espousing or acting on views that are shared with other adherents to a political ideology, however marginal. At trial, the government presented evidence that the rhetoric DiMartino used in his correspondence with the IRS--and continued to espouse at trial--was typical of groups that resist the federal tax laws. Indeed, an undercover IRS agent observed DiMartino at a 2007 Sovereign Citizen

12

convention in Las Vegas, where he expressed frustration at having to "pa[y] [his] ass up in taxes" and asked seminar participants for advice on how sovereign citizens "that have wealth . . . protect their wealth." Ex. FBI-1A at 52-53, 86.

The kinds of unorthodox political and legal theories espoused by DiMartino are not presumptive evidence of mental incompetence. On the contrary, there are many reasons that mentally competent criminal defendants choose to pursue unsupported or even outlandish theories in their defense. For instance, in Clark, the defendant was a self-proclaimed revolutionary freedom fighter; her radical political views, though altogether different from DiMartino's, similarly inspired her to challenge the legitimacy of the government and the proceedings against her. Clark v. Perez, 510 F.3d 382, 386-88 (2d Cir. 2008). Despite "ample notice" that the defendant would mount a "disruptive, political defense" at trial, the trial court determined that she was competent to proceed to trial and represent herself pro se--a determination that was never challenged. Id.

Here, as the district court found, the record suggests that it is at least as likely that DiMartino simply disagreed with the tax laws, as opposed to suffering from a delusional disorder that prevented him from understanding them.

13

DiMartino was a person of affairs who used devious and elaborate means of evasion. His obsession, though out of the mainstream, was one that promoted his material self-interest. Accordingly, we agree with other circuits that have held that political views derived from tax protester movements--however they appear to the uninitiated--are not, by themselves, sufficient evidence of mental incompetence. See, e.g., United States v. Neal, 776 F.3d 645, 656-57 (9th Cir. 2015) (holding that defendant's "voluminous filings of nonsensical pleadings [did] not create *per se* serious doubt about competency" since his conduct was indicative of a "'sovereign citizen' belief system" rather than a "lack of competence"); United States v. Brown, 669 F.3d 10, 18 (1st Cir. 2012) (holding that Sovereign-Citizen defendant's meritless legal arguments "did not evidence confusion on [defendant's] part about the legal proceedings against him, but rather reflected firmly held, idiosyncratic political beliefs punctuated with a suspicion of the judiciary").

Symptoms of actual mental illness may of course coexist with adherence to conspiracy theories or fringe political movements. On this point, DiMartino relies on Auen, 846 F.2d 872. But Auen does not support the proposition that one who considers himself exempt from taxation is also presumptively exempt

14

from trial.  Competency to stand trial is not an issue decided categorically: in Auen, the defendant displayed characteristics that would suggest mental illness regardless of his views of taxation and the constitution.  Auen had "paranoid" beliefs, id. at 878, and had sent a letter containing a thinly veiled death threat to an IRS special agent, id. at 874.  The court observed that Auen's letter, which recounted the murder of a cat named Sweeney, "[could] only be characterized as the product of a disturbed mind."  Id. at 878.

Here, we cannot say that it was an abuse of discretion to deny DiMartino's motion for a competency hearing.  The district court relied on its own observations over the course of the proceedings and carefully weighed the only evidence of incompetency proffered by counsel: Dr. Meisler's report and the affidavit of a lawyer who formed his opinion based on interviews with his client during the relatively short period between his retention and the filing of the competency motion.  See United States v. Kerr, 752 F.3d 206, 218 (2d Cir. 2014), as amended (June 18, 2014) (noting that "the district court had substantially longer experience with [the defendant] over the course of the proceedings" than did stand-by counsel, who represented to the court that his client was acting irrationally).

15

Keeping in mind the "deference . . . owed to the district court's determinations based on observation of the defendant during the proceedings," United States v. Vamos, 797 F.2d 1146, 1150 (2d Cir. 1986), and the evidence that DiMartino was an active participant in his defense, we conclude that the district court did not abuse its discretion by denying DiMartino's motion for a competency hearing.

### III

The exercise of discretion to deny a competency hearing was heavily influenced by the district court's decision to assign no weight to the psychological report prepared by Dr. Meisler. DiMartino argues that the court thereby abused its discretion. That argument is without merit because the record demonstrates that the court conducted a thorough hearing to assess the reliability of Dr. Meisler's report and reasonably concluded that it was unreliable.

"[A] court of appeals is to apply an abuse-of-discretion standard when it 'review[s] a trial court's decision to admit or exclude expert testimony.'" Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999) (quoting Gen. Elec. Co. v.

Joiner, 522 U.S. 136, 138, 139, (1997)); see also Boucher v. United States Suzuki Motor Corp., 73 F.3d 18, 21 (2nd Cir. 1996) (a judge's discretion to admit or exclude expert evidence "is to be sustained unless manifestly erroneous").

As an initial matter, DiMartino argues that the district court was required to hold a competency hearing because Dr. Meisler's report met the standards listed in 18 U.S.C. § 4247(c). This argument is a non-starter. Section 4247(c) prescribes formal requirements for a psychological report if such report is "ordered" by the court; it does not apply to Dr. Meisler's report, which was commissioned by the defense. And even if § 4247(c) were applicable, its requirements would have little bearing on the *reliability* of the report or the weight the court should give to its findings.

Instead, the district court assessed the reliability of Dr. Meisler's report by applying Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). DiMartino contends that this was error because the Rule 702 factors govern admissibility, whereas the court improperly used them to decide the weight it would give to Dr. Meisler's report. That argument is also without merit: Rule 702 "establishes a standard of evidentiary reliability," not just admissibility. Kumho Tire, 526 U.S. at 149; see

17

also <u>United States v. Williams</u>, 506 F.3d 151, 160 (2d Cir. 2007) (recognizing that Rule 702 provides "indicia of reliability" for expert testimony).   The <u>Daubert</u> and Rule 702 factors thus provided an appropriate framework for the district court's well-supported determination that Dr. Meisler's report was unreliable.

The district did not abuse its discretion in deciding to give no weight to Dr. Meisler's report.   First, the court's determination that the report was "based on [in]sufficient facts [and] data," Fed. R. Evid. 702(b), was justified given Dr. Meisler's failure to read transcripts from much of DiMartino's trial and failure to seek collateral support for DiMartino's assertions--for example by interviewing DiMartino's family members, friends, or associates, <u>see</u> Ruling on Motion to Determine Competency, June 28, 2018, at 12-13.   Second, it was not an abuse of discretion for the district court to find that Dr. Meisler employed "[un]reliable principles and methods," Fed. R. Evid. 702(c), because he failed to consider the context of the Sovereign Citizen movement when evaluating DiMartino's belief system.   The district court's conclusion that Dr. Meisler's methods were unreliable was supported by the opinion of the court-appointed expert, Dr. Zonana, who had experience evaluating Sovereign Citizens.

18

Finally, DiMartino argues that the court erred by applying the Rule 702 standard to Dr. Meisler's report but failing to do the same for Dr. Zonana, the court-appointed expert. However, the sole purpose of the court's <u>Daubert</u> hearing was to determine the reliability of Dr. Meisler's report--and, by extension, the weight the report should be given in the reasonable cause inquiry--with Dr. Zonana providing only background information that would assist the court in its analysis of Dr. Meisler's testimony. Even if we were to conclude that the district court improperly relied on Dr. Zonana's testimony without explicitly ruling on its admissibility or reliability under Rule 702, the error would be harmless, because Meisler's own admissions at the <u>Daubert</u> hearing provided ample support for the district court's conclusion that the report was unreliable.

Significantly, Dr. Meisler agreed with Dr. Zonana's testimony that an individual's membership in a subculture is an "important" factor in determining whether his beliefs are delusional. App'x 262. But, as the district court found, Dr. Meisler's report "did not discuss any information regarding circumstances surrounding the development of the defendant's belief system, how it evolved, or how it played a role in his decision not to pay taxes." Ruling on Motion to

19

Determine Competency at 18.   Likewise, Dr. Meisler conceded that DiMartino's purported delusions are "fairly circumscribed around the government and the tax code and the history and the law."   App'x 169.   And the report overlooked evidence that DiMartino's unorthodox political views did not impair him in other areas of his life: his earnings show considerable success as an insurance salesman long after he stopped paying taxes; and DiMartino's PSR noted that his siblings were unaware of him having any mental health problems.

Dr. Meisler's approach to fact-gathering compounded these issues: he reviewed only a fraction of the trial transcript, and did not speak to DiMartino's family, friends, or other tax protesters.   In sum, the district court did not abuse its discretion when it concluded that Dr. Meisler's report could not be relied upon to support a finding of reasonable cause to hold a competency hearing.

## CONCLUSION

We have considered DiMartino's remaining arguments and found them to be meritless.   For the foregoing reasons, the judgment of the district court is hereby **AFFIRMED.**

20