16-3694-cr (L)
*United States v. Lewis*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1ˢᵗ day of July, two thousand twenty.

PRESENT: RALPH K. WINTER,
GUIDO CALABRESI,
DENNY CHIN,
   *Circuit Judges*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,
   *Appellee*,

  -v-             16-3694-cr;
                 19-2140-pr

OSWALD LEWIS, AKA Alexander Louis, AKA Andrew Jackson, AKA John Green, AKA Junior,
   *Defendant-Appellant*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR APPELLEE:        Jonathan P. Lax, Assistant United States Attorney (Susan Corkery,

Assistant United States Attorney, *on the brief*), *for* Richard P. Donoghue, United States Attorney for the Eastern District of New York, Brooklyn, New York.

FOR DEFENDANT-APPELLANT:       Raymond J. Aab, New York, New York.

Appeal from the United States District Court for the Eastern District of New York (Glasser, *J.*).

**UPON DUE CONSIDERATION, IT IS ORDERED, ADJUDGED, AND DECREED** that the judgment and order of the district court are **AFFIRMED**.

Defendant-appellant Oswald Lewis appeals from a final judgment entered October 20, 2016 convicting him, following a jury trial, of two counts of assault with a deadly weapon on federal officers and on persons assisting federal officers, in violation of 18 U.S.C. §§ 111(a)(1) and (b); one count of unlawful use and possession of a firearm, in violation of 18 U.S.C. § 924(c)(1)(A)(iii); one count of possession of a firearm following a felony conviction, in violation of 18 U.S.C. § 922(g)(1); and one count of possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k). He was sentenced to 288 months' imprisonment and five years' supervised release. Lewis also appeals from a memorandum and order entered July 8, 2019 denying his petition to vacate his conviction pursuant to 28 U.S.C. § 2255. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

On appeal from a conviction following a jury trial, the "facts are drawn from the trial evidence and described in the light most favorable to the government." *United States v. Wilson*, 709 F.3d 84, 85 (2d Cir. 2013). In 2014, United States deputy marshals and New York City detectives arrested Lewis at a home in Queens, New York, pursuant to several arrest warrants. During the encounter, Lewis shot at the marshals and detectives before being apprehended.

Lewis was first arraigned on August 29, 2014 and was represented by a federal defender. On September 2, 2014, he replaced the federal defender with retained counsel. On March 10, 2015, Lewis once again replaced his counsel. In September 2015, Lewis expressed his continued dissatisfaction with his retained attorney. The district court relieved his retained counsel and appointed David Stern to represent Lewis pursuant to the Criminal Justice Act.

Stern, whom the district court characterized as "an extremely experienced and capable lawyer," D. Ct. Dkt. No. 118 at 7-8, consulted with a ballistics expert, but decided not to call the witness at trial because some of the witness's views were not helpful. Instead, Stern planned to use the information he learned from the expert to cross-examine the government's witnesses. He also entered into stipulations with the government, admitting, *inter alia*, that Lewis was previously convicted of a felony and knew that he was a fugitive at the time of his 2014 arrest. Stern explained that he

agreed to these stipulations to avoid having the government introduce evidence of Lewis's past crimes and fugitive status.

On March 1, 2016, less than a week before trial, Lewis expressed interest in proceeding *pro se*. The district court warned him -- as it had done at least once before -- that this was "a very bad idea and a very bad decision to make." App'x at 79-80. The court went on to explain that his decision to proceed *pro se* -- which it reiterated was "not a wise one" -- had to be made "knowingly" and "voluntarily." App'x at 81. After hearing these warnings, Lewis decided to keep Stern as counsel. In the week leading up to trial, however, Stern realized that Lewis was still contemplating representing himself and, at Lewis's behest, informed the district court that he would be calling the ballistics expert (or an associate), even though the deadline for expert disclosures had passed.

On the first day of trial, March 7, 2016, Lewis asked to replace Stern with Robert Feldman, retained counsel who was present in the courtroom but had not yet filed a notice of appearance. The district court denied the request, but it explained that Lewis could either proceed with Stern or represent himself. Lewis opted to represent himself, but he told the court that Feldman would serve as his standby counsel. The district court instead appointed Stern as standby counsel, explaining that it was "not going to permit a substitute of counsel in [the] middle of a trial where a hundred jurors have been brought in." App'x at 140. The court noted that "this will be the fourth or

fifth attorney that Mr. Lewis has sought to represent him. It's clearly an incredible attempt to delay this trial indefinitely." App'x at 140.

The government moved to preclude the ballistics expert (or his associate) from testifying, and the court granted that motion on the grounds that Lewis's notice of the expert's testimony was untimely. Stern, as standby counsel, assisted Lewis at trial by discussing whether Lewis should testify, organizing exhibits, and objecting to a jury charge. Ultimately, Lewis was convicted, and his *pro se* post-trial motions -- one to overturn the verdict for insufficient evidence and a second for a new trial -- were both denied by written order.

Lewis continued to proceed *pro se* at sentencing, and he was sentenced to 288 months' imprisonment and five years' supervised release on October 20, 2016. Through counsel, he appealed his conviction. We stayed the appeal because Lewis subsequently filed a § 2255 motion raising the same claims he raises in this appeal. The district court denied the motion in a written order. On appeal, Lewis raises the same arguments brought in his § 2255 petition. None of his challenges has merit.

1.      *Ineffective Assistance of Counsel*

We conclude that Stern's pre-trial performance -- which included entering into stipulations to prevent the jury from hearing damaging evidence about his client and deciding not to call an expert witness -- was objectively reasonable. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Indeed, these are common strategic decisions

-5-

well within a defense attorney's ambit. *See Brown v. Artuz*, 124 F.3d 73, 77 (2d Cir. 1997). Because Stern's pre-trial representation was objectively reasonable, we need not reach the issue of prejudice. *See Strickland*, 466 U.S. at 697.

To the extent that Lewis has a right to effective assistance of standby counsel -- a right we have not to date held exists, *see United States v. Morrison*, 153 F.3d 34, 55 (2d Cir. 1998) -- any such right was not violated. Stern assisted Lewis at trial by, *inter alia*, discussing whether Lewis should testify, organizing exhibits, and objecting to a jury charge. He was present throughout trial and ready to assist Lewis. Lewis has pointed to nothing in the record to suggest that Stern was constitutionally ineffective in his role as standby counsel.

2.        *Decision to Proceed* **Pro Se**

We also conclude that Lewis "knowingly and intelligently waived [his] right to counsel before proceeding *pro se*." *United States v. Schmidt*, 105 F.3d 82, 88 (2d Cir. 1997); *see also Faretta v. California*, 422 U.S. 806, 835 (1975) ("[T]o represent himself, the accused must knowingly and intelligently forgo those relinquished benefits." (internal quotation marks omitted)). To ensure that a defendant who opts to proceed *pro se* does so knowingly and intelligently, he "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 835 (internal quotation marks omitted). Here, the record is clear: The district court fully

advised Lewis of the potential pitfalls of self-representation a few days earlier, when the court explicitly told Lewis that self-representation was "a very bad idea," App'x at 79-80, and warned him that he would be held to the same standards as a lawyer. Nevertheless, Lewis decided to represent himself. This decision was made knowingly and intelligently, and the district court did not err. *United States v. Hausa*, 922 F.3d 129, 134 (2d Cir.), *cert. denied*, 140 S. Ct. 208 (2019) ("We review conclusions regarding the constitutionality of a defendant's waiver [of counsel] de novo, and supporting factual findings for clear error." (internal quotation marks omitted)). Moreover, Lewis did not have to represent himself, as the court gave him the option of proceeding with appointed counsel as his lawyer.

**3.      *Choice of Counsel***

Relatedly, we conclude that Lewis was not denied choice of counsel. A defendant who is appointed counsel is not entitled to counsel of his choice. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006). Stern was his fourth lawyer, and although he wished to substitute Feldman for Stern, he made the request on the first day of trial after being warned multiple times that he would not be allowed to further delay proceedings by changing attorneys. Because "delay is generally a valid reason to deny a motion to substitute counsel," *United States v. Brumer*, 528 F.3d 157, 161 (2d Cir.

-7-

2008), the district court did not err when it denied Lewis's request to substitute his appointed counsel, *see United States v. Parker*, 469 F.3d 57, 61 (2d Cir. 2006).[1]

**4.      *Continuance***

Trial courts have "broad discretion . . . on matters of continuances." *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983); *see also Payne v. Jones*, 711 F.3d 85, 92-93 (2d Cir. 2013) ("Because continuances can be highly disruptive to the courts and the parties, especially when granted close to the start of trial . . . , trial courts are entrusted with broad discretion to decide whether the stated purpose of a continuance warrants the disruption and delay of granting one." (citations omitted)).  We review the decision to deny a continuance for abuse of discretion, *Payne*, 711 F.3d at 93, "and we will find no such abuse unless the denial was an arbitrary action that substantially impaired the defense." *United States v. O'Connor*, 650 F.3d 839, 854 (2d Cir. 2011) (internal quotation marks omitted).  Here, where Lewis requested a continuance on the first day of trial after he had already repeatedly delayed proceedings with multiple requests for new counsel, the district court did not abuse its discretion in denying a continuance.

**5.      *Expert Testimony***

Finally, the district court did not abuse its discretion when it granted the government's motion to exclude Lewis's expert witness because Lewis had provided

---

[1]      Our analysis is the same with respect to Lewis's claim that the district court erred by not permitting Feldman to serve as standby counsel.

untimely notice to the court that he would call an expert. We look to the following factors to determine whether a court abused its discretion in precluding evidence that did not adhere to the discovery schedule: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997). We will only overturn such a decision if it is "manifestly erroneous." *United States v. DiMartino*, 949 F.3d 67, 74 (2d Cir. 2020) (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996)). In the circumstances here, we cannot say that the district court's decision to hold Lewis to the discovery deadline was manifestly erroneous.

\* \* \*

We have considered Lewis's remaining arguments and conclude they are without merit. For the foregoing reasons, we **AFFIRM** the judgment and order of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

-9-