*United States v. Harris*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of November, two thousand twenty.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge,*
> AMALYA L. KEARSE,
> RICHARD C. WESLEY,
> *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                              19-1873

CHARLES GREEN, a/k/a C, AKUAN JOHNSON, a/k/a Bleek, VINCENT HARRELL, a/k/a VI, KENNETH WILSON, a/k/a KB, JEROME BELL, a/k/a Little Bleek, RACHEL MILLARD, a/k/a R, JOLENE BARRETT, MISTI EVANS, a/k/a Misti Card, AMANDA KAMP,

> *Defendants,*

ALONZO LAMAR HARRIS, a/k/a L,

> *Defendant-Appellant.*

_____

For Defendant-Appellant:                     PAÚL CAMARENA, Chicago, IL

For Appellee:                    CARINA H. SCHOENBERGER (Nicolas Commandeur, *on the brief*), Assistant United States Attorney, *for* Antoinette T. Bacon, Acting United States Attorney for the Northern District of New York, Syracuse, NY

Appeal from a judgment of the United States District Court for the Northern District of New York (Suddaby, *C.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Alonzo Lamar Harris ("Harris") appeals from a judgment of the United States District Court for the Northern District of New York (Suddaby, *C.J.*), convicting him of methamphetamine distribution conspiracy and money laundering conspiracy. Harris argues that the district court erred by failing to order a psychiatric evaluation and to make formal findings on the record regarding his competence to stand trial. In assessing whether the district court abused its discretion, *see United States v. DiMartino*, 949 F.3d 67, 71 (2d Cir. 2020), we assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

*     *     *

"It is well established that the Due Process Clause . . . prohibits the criminal prosecution of a defendant who is not competent to stand trial." *Medina v. California*, 505 U.S. 437, 439 (1992). "A defendant is considered competent if he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." *United States v. Oliver*, 626 F.2d 254, 258 (2d Cir. 1980) (internal quotation marks, citation, and alterations omitted). By contrast, "[a] defendant is not competent, and the criminal proceeding against him may not progress, when his

2

mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *United States v. Kerr*, 752 F.3d 206, 215 (2d Cir. 2014) (internal quotation marks and citation omitted).

A district court must "order a hearing" either on motion or "*sua sponte* to determine the mental competence of a defendant '*if there is reasonable cause to believe* that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent.'" *United States v. Quintieri*, 306 F.3d 1217, 1232 (2d Cir. 2002) (emphasis added) (quoting 18 U.S.C. § 4241(a)). To aid in its competency assessment, the district court "may order that a psychiatric or psychological examination of the defendant be conducted." 18 U.S.C. § 4241(b). As this permissive language makes plain, a district court need not order a psychological examination whenever the defendant's competency to stand trial is questioned. A court may assess the need for a competency hearing based "on [its] observation of the defendant during the proceedings." *United States v. Vamos*, 797 F.2d 1146, 1150 (2d Cir. 1986); *see also, e.g.*, *United States v. Sovie*, 122 F.3d 122, 128 (2d Cir. 1997) (affirming the denial of a psychiatric examination where the district court personally observed the defendant participate in his defense). "Whether 'reasonable cause' to hold a hearing exists is a highly particularized assessment that 'varies in each case.'" *DiMartino*, 949 F.3d at 71 (quoting *United States v. Zhou*, 428 F.3d 361, 379 (2d Cir. 2005)).[1]

Harris contends that the district court abused its discretion because it neither ordered a competency evaluation nor made formal findings regarding his competence. According to

---

[1] Harris is incorrect to assert that a district court *must* order a psychiatric evaluation whenever defense counsel suggests one is required. Defense counsel's assessment is but one factor a district court may consider in determining how to proceed. *See Kerr*, 752 F.3d at 218.

Harris, the district court had reasonable cause to question his competency based upon: his refusal to meet or work with his fourth attorney, Dana VanHee ("VanHee"), prior to trial; his "expletive filled tirade" against VanHee; his belief that an order of the Attorney General revoked "half of the evidence" in the case; VanHee's letter to the court expressing "concerns regarding [Harris's] mental state" and opining "that the Court should order a psychiatric exam"; and the district court's statement that it was close to ordering such an exam. Appellant's Br. at 8–12. We disagree.

Harris's behavior prior to trial was not "so 'erratic' that it should have given the district court reason to doubt his competency." *Kerr*, 752 F.3d at 217 (holding that the defendant's "refusal to cooperate or communicate with his attorneys," frivolous "defensive theories," and "belligerent attitude" did not require the court to question the defendant's competency). The district court observed and "directly questioned" Harris at over ten pretrial conferences, and Harris consistently responded coherently, "evidenc[ing] no confusion or lack of understanding," *Oliver*, 626 F.2d at 258–59 (holding that the district court did not abuse its discretion by declining to order a competency examination where the defendant gave responsive answers to the district court's questions throughout the proceedings). And Harris's other attorneys provided the district court with no reason to believe that Harris "had any difficulty in assisting in preparation or in comprehending the nature of the proceedings." *See United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995) (noting that defense counsel's ability to work with his client "'provide[d] substantial evidence of the defendant's competence'" (quoting *Vamos*, 797 F.2d at 1150)).

To the contrary, Harris's second attorney informed the district court that he and Harris had exchanged numerous emails regarding a strategy to contest the weight of the drugs for which Harris was responsible. And Harris's third attorney told the district court that he met with Harris for over two hours to go through the indictment and some of Harris's prior correspondence

4

regarding the case. Granted, Harris raised the mistaken belief at one conference that an order of the Attorney General barred the introduction of wiretap evidence in his case. But the district court appropriately credited this misconception to Harris's lack of legal training, not any incompetence.

Of Harris's four attorneys, only VanHee suggested that the court order a mental examination, principally due to Harris's tirade against him and refusal to engage with him when they first met. But the district judge—who had "substantially longer experience" in dealing with Harris by that point than did VanHee, *Kerr*, 752 F.3d at 218—determined that Harris was frustrated he couldn't screen VanHee before VanHee's appointment as counsel, not because Harris had any incapacity. Ultimately, VanHee never formally moved for a competency examination or hearing. And Vanhee admitted at the final pretrial conference that Harris's earlier refusal to meet and work with him reflected an unwillingness, not an inability, to do so, noting they couldn't communicate "by [Harris's] own choice." Appellee's App'x at 141.

Indeed, Harris's behavior at trial indicated he understood the nature of the proceedings and could assist in his defense. *See Kirsh*, 54 F.3d at 1070 ("[T]he failure to conduct a full competency hearing is not a ground for reversal when the defendant appeared to be competent during trial, and the district court's view of the defendant's competency based on its observations at trial is entitled to deference."). The district court observed Harris hand VanHee notes and participate in VanHee's questioning of witnesses during the trial. *See* Tr. at 802–03. VanHee agreed with the district court's observations, noting that he even adopted some of Harris's ideas and proposed lines of questioning. *See* Tr. at 803; *see also Sovie*, 122 F.3d at 128 (affirming a competency determination where the district court "personally observ[ed] that [the defendant] was

5

a knowing participant in his defense" in that "[h]e took notes, conversed with counsel, and reacted reasonably to the admission of evidence").

Nor did the district court necessarily abuse its discretion by declining to make formal findings regarding Harris's competency to stand trial. To be sure, we have held that, "[i]n exercising its discretion, the district court must 'make findings on the record concerning the defendant's competency where the facts presented to the court warrant such an inquiry.'" *Dimartino*, 949 F.3d at 71 (quoting *United States v. Auen*, 846 F.2d 872, 878 (2d Cir. 1988)); *cf. United States v. Arenburg*, 605 F.3d 164, 170–72 (2d Cir. 2010) (per curiam) (remanding for findings where the defendant "made repeated references to 'radio raves,' 'microwave channels,' and a conspiracy involving MGM Studios and the government with the object of publicly broadcasting his thoughts"); *Auen*, 846 F.2d at 878–79 (remanding for findings where the defendant relayed stories that could "only be characterized as the product of a disturbed mind" as well as "various irrational, paranoid beliefs" regarding his prosecution, including a fear of "psychopolitical terrorism"). But the facts presented to the district court in this case did not warrant such an inquiry.

And in any event, the district court made detailed findings concerning Harris's competency. The district court memorialized its observations at trial concerning Harris's active participation in his defense; and, at sentencing, the district court described in detail the history of the proceedings. It concluded that Harris sought to "employ a purposeful strategy to obstruct the criminal proceedings . . . to create appellate issues in the face of overwhelming evidence of his guilt," including by promising to pay fellow inmates to discredit the testimony of cooperating witnesses and refusing to work with numerous "extremely competent and experienced attorneys . . . [,] making baseless and outrageous accusations against them." Appellant's App'x at 34–35.

6

Along with its general observations throughout the proceedings, these remarks more than suffice to establish that remand is neither necessary nor warranted.

We have considered Harris's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT
Catherine O'Hagan Wolfe, Clerk